UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PHILLIP DUSSETT | CIVIL ACTION |
| VERSUS | NO. 09-6462 |
| JEFFERSON PARISH CORRECTIONAL CENTER, ET AL | SECTION "I"(4) |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.

On October 26, 2009, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 12. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

I.   **Factual Summary**

   A.   **The Complaint**

The plaintiff, Phillip Dussett ("Dussett"), is an inmate incarcerated in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana. He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the JPCC, the Jefferson Parish Sheriff's Office ("JPSO"), Lieutenant Gary Cook of the Special Investigations Unit ("SIU") Department at JPCC, and Deputy Glenda Rabito.

Dussett alleges that he received a disciplinary report after he was disrespected by a racist and unprofessional female guard. He complains that the SIU placed him on lockdown for days. He claims that he was then moved to isolation for the same offense in violation of his Fifth, Eighth, and Fourteenth Amendment rights. He indicates that, at the time of the filing of the complaint, he had been in isolation for 47 days.

As relief, Dussett seeks his release from isolation, damages for the cruel and unusual punishment and deprivation of his constitutional rights for the simple verbal abuse offense with which he was charged. He alleges that a verbal abuse office is a Rule (3) office which does not warrant the excessive punishment. He also requests the Court investigate the cruel unusual occurrences that go on within the prison by Jefferson Parish Correctional Deputies.

   B.   **The *Spears* Hearing**

Dussett testified that he arrived at the JPCC on November 25, 2008, on the charge of attempted second degree murder. Around January, 2009, he was placed on isolation because of his prior disciplinary history of fighting in the jail during his last stay in 2006. He remained there for about three months because of this. During that time, the colonel questioned him about who was

bringing contraband into the jail. If he answered him, he would be returned to regular population. He asked to be moved to a regular tier, and he did get a review hearing on his isolation status.

While he was in isolation, he received this verbal abuse charge when the female deputy was searching his cell. He was put on lockdown at first for about 12 days. After completing that time, he was then put in isolation for the same charge from July 20, 2009, until the current time. He stated that overall, he was in isolation for about seven out of the eleven months he had been in JPCC. He stated that Colonel Lavender and the SIU, under Lieutenant Cook, decided on the assignment to continued isolation because of his past history. Dussett further testified that the SIU opened his legal mail from the ACLU before it was given to him. The letter addressed his claims in this lawsuit. The deputy who brought it to me told me that the SIU opened it. He also stated that he believes Lieutenant Cook is the reason for his continued isolated confinement.

He stated that he filed suit against Deputy Rabito because she placed the charge on him. She called him a "nigger." When he told her that he was going to file a complaint against her, she filed this disciplinary charge against him. He claims that he did not do anything to deserve it. He also testified that he appealed the disciplinary finding to the SIU at JPCC, but he received no relief. He testified that he did not know any other way to appeal.

## II.    **Standard of Review for Frivolousness**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d
3

114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

    **A.    JPCC and JPSO are Improper Defendants**

Dussett names the JPCC and the JPSO as defendants. These entities are not subject to suit and any claims against these entities are frivolous.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights while acting under color of state law. 42 U.S.C. § 1983 (2006); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). In accordance with Rule 17(b) of the Federal Rules of Civil Procedure,

4

Louisiana law governs whether these defendants can be sued.³ Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24 (2009).

The State of Louisiana, however, grants no such legal status to any parish sheriff's office. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. Ct. App. 1977), *writ refused*, 352 So. 2d 235 (La. 1977). Thus, none of the parish sheriff's offices are legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988). Accordingly, the Jefferson Parish Sheriff's Office is not a juridical person capable of being sued under § 1983. The claims, if any, against the JPSO are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A, and 42 U.S.C. § 1997e.

Furthermore, under federal law, a county (or parish) prison facility is not a "person" within the meaning of Rule 17. *Cullen v. DuPage County*, No. 99 C 1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97 CIV. 0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982). The Court finds no law, constitutional, statutory, or otherwise, that defines a parish jail or any unit or department therein to be a person with the capacity to sue or to be sued. A parish jail is, as this Court has previously described, "not an entity, but a building." *See Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing St. Tammany Parish

---

³Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *See* Fed.R.Civ.P. 17(b).

Jail with prejudice); *Dale v. Bridges*, No. 96-3088, 1997 WL 810033, at *1 n.1 (N.D. Tex. Dec. 22, 1997) (Dallas County Jail is not a jural entity capable of being sued), *aff'd*, 154 F.3d 416 (5th Cir. 1998). Thus, the Jefferson Parish Correctional Center is not a proper defendant in this case.

Furthermore, a parish jail also lacks the capacity to sue or be sued under Louisiana law. Although Louisiana courts have not yet ruled on the precise issue of whether a parish jail is a juridical person that can sue or be sued, the Louisiana Supreme Court in *Roberts v. Sewerage & Water Board of New Orleans*, 634 So. 2d 341 (La. 1994), set forth a framework within which to determine an entity's juridical status. The Court in *Roberts* stated:

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati, § 2.18 and authorities cited therein, §§ 2.19, 2.20. Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

*Roberts,* 634 So. 2d at 346-47. In concluding that the Sewerage and Water Board was capable of being sued, the *Roberts* Court focused its analysis on the independent management, financing and operations of the Board. *See Id.* at 352.

By contrast, in *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. Ct. App. 1994), *writ denied*, 650 So. 2d 244 (La. 1995), the Louisiana Third Circuit Court of Appeal held that under the *Roberts* analysis, the City Council of Lafayette had no capacity to sue or be sued. In so holding, the Court expressly found "no authority, constitutional, statutory, or via home rule charter" that authorized the Lafayette City Council to institute a law suits on its own motion. *Bowen*, 649 So.2d at 613.

In this case, state law divides responsibility for parish jails. The parishes are charged with their jails' physical maintenance. *See* La. Rev. Stat. Ann. § 15:702 (2009). However, the duty to administer and operate the jails falls on the sheriff of each parish. *See* La. Rev. Stat. Ann. § 15:704 (2009). The office of sheriff is a constitutional one in Louisiana, existing separately from parish government. La. Const., Art. 5, § 27; *see also Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. Ct. App. 1991) (holding that parish could not be liable for injuries attributed to sheriff). Under the *Roberts* framework, the Terrebonne Parish Criminal Justice Complex is not "legally empowered to do" anything independently of either Terrebonne Parish or the Terrebonne Parish Sheriff. *Roberts*, 634 So. 2d at 347. The jail is not a separate entity, but merely a shared branch or facility of these two greater entities.

For these reasons, the claims, if any, against the JPCC are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A, and 42 U.S.C. § 1997e.

### B. Claims Against Deputy Rabito

Dussett also named Deputy Glenda Rabito as a defendant in this matter because she allegedly filed a false disciplinary charge against him. Dussett testified that he was found guilty of the charge and placed on lockdown for 12 days as a result. Although he also complains that he was thereafter placed in indefinite isolation, he concedes that Deputy Rabito had nothing to do with that assignment. He also suggests that Deputy Rabito used racial slurs against him during the cell-search that led the disciplinary charge.

First, the law is well settled the use of a racial epithet by a custodial officer does not give rise to a cause of action for violation of constitutional rights. *Williams v. Bramer*, 180 F.3d 699, 706 (5th

Cir.), *reh'g denied & opin. clarified*, 186 F.3d 633 (5th Cir. 1999). "Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Slagel v. Shell Oil Reference.*, 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994) (citations omitted). Thus, Dussett's alleged exposure to derogatory remarks by Deputy Rabito does not rise to the level of a constitutional violation, and this claim must be dismissed as frivolous.

Next, in order to bring a § 1983 claim based simply on the filing of an allegedly false disciplinary charge, absent an allegation of retaliatory interference with the exercise of a constitutional right, a prisoner must show favorable termination prior to bringing suit. *Woods v. Smith*, 60 F.3d 1161, 1165 n.16 (5th Cir. 1995) (citing *Ordaz v. Martin*, 5 F.3d 529 (5th Cir. 1993)). Dussett testified that he was not successful in his efforts to appeal the disciplinary conviction at JPCC. His claims arising from the filing of an allegedly false disciplinary charge lacks an arguable basis in law, and therefore is frivolous.

Furthermore, a prisoner's claim that he was charged with a disciplinary infraction that he did not commit does not state a deprivation of due process. *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984); *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986). "If the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded [the plaintiff] to clear himself of misdeeds which he did not commit sufficed." *Id*. at 254. Dussett does not challenge the disciplinary process in this manner and has failed to state a due process violation for this Court to consider further. *See Sandin v. Connor*, 515 U.S. 472, 481-83 (1995).

The United States Fifth Circuit Court of Appeals has held that "[i]n the wake of *Sandin* . . . 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996)

(quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995)). Dussett's concern with the effects of the allegedly false charge arises solely from his confinement in lockdown. This is not enough to state a basis for relief under § 1983.

His claims against Deputy Rabito arising from the allegedly false charges must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

### C. Claims Against Lieutenant Cook

Dussett also alleges that Lieutenant Cook made an administrative decision to place him in isolation because of his prior history of disciplinary trouble at the jail. This claim is not sufficient to warrant relief under § 1983 and is frivolous.

The law is well settled that inmates have no protected property or liberty interest in their custodial classification or placement in the jail. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988). The placement and classification of prisoners is a matter left to the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990); *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981) (*en banc*).[4] As such, the federal courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).

Considering this, the federal courts have recognized that "[i]nmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." *Ricker v. Leapley*, 25

---

[4]*Overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986), *aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).

F.3d 1406, 1409 (8th Cir. 1994); *accord Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989) (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted). Thus, in Louisiana, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001); *accord Jones v. Roach*, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006). The Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification." *Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing *Sandin*, 515 U.S. at 472).

In this case, Dussett testified that Lieutenant Cook told him that his isolation confinement was based on his prior disciplinary record at the prison. Dussett conceded that he had numerous fights in the prison during his prior confinement that ended in 2006. He also acknowledged that the decision to place him in isolation came after he received the disciplinary charge for verbal abuse against Deputy Rabito. He further indicated that he was questioned about his knowledge regarding the trafficking of contraband into the prison.

The prison officials were at liberty to classify Dussett in the manner necessary to maintain discipline at the prison. Consequently, the Court finds that the claims against Lieutenant Cook are also frivolous and otherwise fail to state a claim for which relief can be granted.

**IV.     Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that the plaintiff's § 1983 claims against the defendants, the Jefferson Parish Correctional Center, the Jefferson Parish Sheriff's Office, Lieutenant Cook, and Deputy Rabito, be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and §1915A.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 21st day of April, 2010.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.